## HOPTON v. UNITED STATES GYPSUM CO.

No. 246.

District Court, M. D. Tennessee, Nashville Division.

July 31, 1942.

Cecil Sims (of Bass, Berry & Sims), of Nashville, Tenn., for plaintiff.

William Waller and D. L. Lansden (of Armistead, Waller, Davis & Lansden), both of Nashville, Tenn., and Clifford C. Pratt, of Chicago, Ill., for defendant.

DAVIES, District Judge.

I. The defendant United States Gypsum Company is a corporation organized under the laws of the State of Illinois and is engaged in the manufacture and sale of building materials and supplies on a nationwide scale throughout the entire United States. Among its properties are plants for the manufacture of gypsum plaster, which are located at Plasterco, Virginia, Sweetwater, Texas, Greenville, Mississippi, East Chicago, Indiana, and at other points in various states. For the purpose of selling its products the defendant has grouped the various states of the United States in territories, which operate under the supervision of a District Manager who in turn operates under a Division Manager at the home office of the company in Chicago. Tennessee is in the Southeastern Division, of which Frank Miller is the Division Manager, the District Manager being R. H. Branan, who is located at Birmingham, Alabama, and whose territory embraces several states including Middle and Eastern Tennessee.

The defendant employs and maintains resident salesmen throughout the United States, who operate within a limited territory and who are under the supervision of and report to a District Manager. From April, 1929, continuously until August, 1937, the defendant's resident salesman in the Middle District of Tennessee was E. E. O'Harra, who resided at Nashville, Tennessee, from which point he worked the territory assigned to him, which included Davidson County and other counties in Middle Tennessee. O'Harra's employment was terminated in August, 1937, and he was succeeded by Dan McLean, who since that time has been the defendant's salesman and who has continuously resided in Nashville, Davidson County, Tennessee.

The defendant establishes dealers and distributors throughout the United States, including the Middle District of Tennessee, and sell its goods through its resident salesmen to these dealers and distributors. The resident salesmen also make direct sales to contractors and other consumers of their products.

Defendant also maintains specialty salesmen who travel throughout the United States, including the Middle District of Tennessee, at regular intervals, and who sell direct to contractors, consumers, and also to dealers.

All of these employees of the types heretofore mentioned devote their entire time to the defendant's business and are paid regular salaries plus a bonus on sales, and are furnished automobiles paid for by the defendant and their traveling expenses and the upkeep of the automobiles are paid for by the defendants.

The defendant for a number of years and during the years 1939, 1940, and 1941, sold and delivered in Tennessee products amounting to approximately $300,000.00 per annum. All of these goods were shipped into Tennessee from the defendant's various manufacturing plants upon orders received from Tennessee and obtained by its resident agent and its other employees in the manner hereinafter set out.

2. Defendant United States Gypsum Company has never qualified to do business in Tennessee by filing its charter and appointing a resident statutory agent within the state as provided by the laws of Tennessee. United States Gypsum Company, a corporation organized under the laws of Delaware, has been qualified to do business in Tennessee and has designated a resident agent in the state continuously since 1919. The Delaware corporation is a wholly owned subsidiary of the Illinois corporation by the same name and its officers and directors are identical. The Delaware corporation is engaged in furnishing engineering service, which is one of the many departments of the Illinois corporation, and the subsidiary acts as an agent for the parent corporation in the performance of these services.

3. During the course of the defendant's continuous business in Tennessee from 1929 to date the defendant has on occasions and over a considerable period of time maintained a stock of goods in Tennessee on consignment and at one time for at least a period of one and a half years its District Office was located in Memphis, Tennessee, from which it transacted business in Tennessee, receiving orders from its salesmen, passing on credits, accepting and rejecting orders, collecting accounts and otherwise doing business within the State of Tennessee. The defendant furnishes its resident salesmen with a book of instructions and also with a list of its dealers and the names of customers and users of its products within the resident salesman's territory, with credit ratings for each of them, and defendant's resident agent was authorized to and in fact did continually make sales of the defendant's products to such customers, the resident agent having the authority to and in fact closing the transaction where the sale came within the credit limits assigned to the customer. Each month the resident agent was furnished with a statement showing the status of the various accounts so that he might keep informed as to the outstanding credit and know the limit of his authority to make sales.

The written order form requiring all orders to be submitted to the District Manager for approval, according to the admission of the defendant's own witness, was not used in at least eighty per cent of the sales and with respect to these sales, which ran into large volume, no such condition was signed by the purchaser nor was there any attempt on the part of the defendant to notify the purchaser of the acceptance of his order. The testimony shows without dispute that the orders taken by defendant's salesman residing in the Middle District of Tennessee were uniformly shipped without formal acceptance and practically no orders were rejected. The resident agent further was instructed by the defendant and in fact did make regular collections on delinquent accounts, having authority to close such accounts by the taking of notes where these could be obtained.

When customers were in a hurry to obtain goods, the agent had authority to and in fact did send the orders to the mill direct, sometimes by telephone and telegraph, and the mill shipped the goods on the salesman's order before the order was ever received at the District Office.

It was also part of the resident salesman's duties and he in fact did investigate and adjust complaints, and while the agent had no general authority to make final adjustments such settlements were always concluded by the resident agent within a range of authority communicated to him in connection with each complaint.

As late as January, 1942, the defendant issued a bulletin to all of its resident salesmen, including McLean at Nashville, expressly confirming the salesmen's authority with respect to the matters set out above and authorizing such procedure.

4. Defendant also fixed sales quotas for each of its resident agents covering the defendant's products sold by him within his district and the resident agent was expected to meet these quotas, and while he received a regular monthly salary his additional bonus compensation depended upon the amount of his sales within his territory.

Where defendant's resident agent made a direct sale with a customer or other user of its products, it was customary in most instances for the product to be supplied by the local dealer and the purchaser made his payments to the local dealer, although in numerous instances the sale was actually made by the defendant's resident salesman. This was in accordance with the defendant's policy of protecting their dealers and enabling them to realize a commission on all sales made within their territory whether by the dealer or by the defendant's resident agent. In instances where the resident agent made a sale involving less than a carload of materials the agent turned the orders over to the local dealer, who filled them out of stock which was on hand and in the State of Tennessee at the time the resident agent made the sale.

It was an additional part of the resident agent's duties to procure new accounts and make arrangements for new dealers in his territory to handle the defendant's products. The resident agent, as well as the District Manager, attended conventions in Tennessee for the purpose of displaying the defendant's products and interesting prospective purchasers in their use, and the resident agent was allowed to entertain contractors and other customers within the State of Tennessee, the expense of which was borne by the defendant.

5. During the year 1939, and shortly prior to the transaction out of which this litigation arose, the defendant sent its special sales representative Hazlewood from Chicago, Illinois, to Nashville, Tennessee, and this representative negotiated with H. V. Hopton, the plaintiff in this cause, and while in Tennessee entered into a contract to sell and supply Hopton with all of his requirements for the plastering of the State Penitentiary at Ashland, Kentucky. Hazlewood had authority to conduct these negotiations and make the sale and this transaction was initiated and concluded in Tennessee without being required to be submitted to any other official of the company for approval. This was a very substantial transaction involving the sale of a large quantity of gypsum plaster.

The contract of purchase out of which this litigation arose was also concluded in Tennessee, according to the undisputed testimony, by the defendant's district manager, Branan who undertook to sell the plaintiff his requirements of plaster for the Jefferson County Hospital in Birmingham, Alabama, while Hopton was in Birmingham, but no agreement was reached because of a difference in price. Hopton thereupon returned to Nashville, Tennessee, and District Manager Branan communicated with the defendant at its home office in Chicago and obtained complete authority to conclude a contract with Hopton and thereupon came to Nashville, Tennessee, and went to Hopton's office and conducted the negotiations which resulted in a final agreement for the purchase of approximately five hundred tons of gypsum plaster by Hopton from the defendant company. Branan admitted that he was authorized to come to Nashville and to enter into the agreement and the evidence shows without dispute that this agreement, which is the basis of the present litigation, was entered into at Nashville, Tennessee, between the plaintiff and the defendant's District Manager Branan.

This sale was likewise a very substantial business transaction involving the shipment of some two or three carloads of gypsum plaster each week and covering a total of approximately five hundred tons of plaster.

6. When this suit was instituted by the plaintiff the defendant's District Manager Branan was in Nashville, Tennessee, on business for the defendant company and he was served with process in this cause on that occasion and while engaged in business on behalf of the defendant in Nashville, Davidson County, Tennessee.

## Conclusions of Law.

I. The Court concludes from the foregoing findings of fact that the United States Gypsum Company, a corporation organized under the laws of Illinois, was present in the State of Tennessee, and doing business in the State of Tennessee in such a sense as to manifest its presence within the state so as to render said corporation amenable to suit and to the service of judicial process within the State of Tennessee and within the Middle District thereof.

2. The summons issued in this cause was properly served upon the defendant's District Manager, who was within the State of Tennessee, and within the Middle District thereof at the time the summons was served and said District Manager was an agent of the defendant corporation upon whom process could be legally served within Tennessee, and within the Middle District thereof under the law and under the provisions of Rule 4(d) (3) and (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and under the statute laws of the State of Tennessee governing suit against and service upon foreign corporations in actions brought in the courts of general jurisdiction of the State of Tennessee.

3. A decree will therefore be entered dismissing that part of the defendant's third and fourth defenses which question the jurisdiction and the service of process in this cause.